**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ROBERT J. CAMPTON JR., individually and on behalf of all others similarly situated,<br><br>  Plaintiff,<br><br>       v.<br><br>MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, MANAGED ACCOUNT ADVISORS LLC, and BANK OF AMERICA CORPORATION,<br><br>  Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

# **TABLE OF CONTENTS**

I.     INTRODUCTION ..................................................................................1

II.    JURISDICTION AND VENUE ...........................................................3

III.   PARTIES ..............................................................................................3

       A.    Plaintiff ......................................................................................3

       B.    Defendants ..................................................................................4

IV.   FACTUAL ALLEGATIONS ...............................................................5

       A.    Merrill's Sweep Program .........................................................7

       B.    Merrill's Duties to Its Investor Clients ....................................8

             1.    Merrill's Duties Under Regulation Best Interest .........8

             2.    Merrill's Duties Under the Investment Advisers Act ..............................10

             3.    Merrill's Common Law Duties Pursuant to Its Relationship with Sweep Program Clients ...................11

       C.    The Sweep Program Fails to Pay Reasonable Interest Rates ...............13

       D.    The Sweep Program Benefits Merrill Rather Than Its Clients ...............17

       E.    Merrill's Disclosures to Its Clients Concerning the Sweep Program Contained Material Misrepresentations and Omissions ...............21

V.     CLASS ACTION ALLEGATIONS ...................................................23

VI.   CLAIMS FOR RELIEF .....................................................................27

VII.  PRAYER FOR RELIEF .....................................................................35

VIII. DEMAND FOR JURY TRIAL ..........................................................36

Robert J. Campton Jr. ("Plaintiff") brings this class action against Merrill Lynch, Pierce, Fenner & Smith Incorporated ("MLPF&S"), Managed Account Advisors LLC ("MAA" and, with MLPF&S, "Merrill"), and Bank of America Corporation ("Bank of America") (collectively, the "Defendants"), individually and on behalf of the Class (defined below).[1]

## I.    INTRODUCTION

1.    Plaintiff brings this action to recover damages arising out of Defendants' unlawful conduct related to the Merrill Lynch Bank Deposit Program ("MLBD Program") and the Merrill Lynch Direct Deposit Program ("MLDD Program") (collectively, the "Sweep Program"), by which Merrill automatically transfers cash from its clients' investment accounts into interest-bearing deposit accounts selected by Merrill at affiliated financial institutions, referred to as the "Affiliate Banks."[2]

2.    Ostensibly, the purpose of the Sweep Program is to provide clients with Federal Deposit Insurance Corporation ("FDIC") insurance and interest on their uninvested cash.

3.    Defendants used the Sweep Program to generate substantial returns for the Affiliate Banks, almost none of which was returned to Merrill's clients in the form of reasonable interest on their deposits. While asserting that it operates the Sweep Program as its clients' agent, Merrill allows the Affiliate Banks to retain ***nearly all*** the returns its clients' cash generates, redounding to

---

[1] The allegations herein are based on personal knowledge as to Plaintiff's own conduct, and are made on information and belief as to all other matters, based on an investigation by counsel, which included a review of documents created and distributed by Defendants; filings with the U.S. Securities and Exchange Commission ("SEC"); SEC rules and regulations; and other publicly available commentary, analysis, and information. Upon information and belief, Plaintiff submits that discovery will further support the allegations in this Class Action Complaint ("Complaint").

[2] The "Affiliate Banks" include Bank of America, N.A, Bank of America California, N.A., and Merrill Lynch Bank and Trust Company (Cayman) Limited. *See Sweep Program Guide*, Merrill (Aug. 2024), https://olui2.fs.ml.com/publish/content/application/pdf/GWMOL/Sweep-Program .pdf. Each of the Affiliate Banks is a subsidiary of Defendant Bank of America.

the benefit of Bank of America. Merrill does this by offering an unreasonably low interest rate on cash in its Sweep Program—currently between 0.01% and 0.15% (depending on deposit program and balance) for clients who are not enrolled in an investment advisory program[3]—to Class members, even as competing financial institutions offer interest rates as much as 450 times higher on their own clients' swept cash.

4.      The Sweep Program is primarily a source of income for Bank of America. While Merrill clients receive unreasonable, below-market interest rates on cash held in the Sweep Program, Bank of America profits significantly.

5.      Merrill designed, implemented, and operated the Sweep Program to benefit itself and Bank of America at the expense of its clients.

6.      Plaintiff, individually and on behalf of the Class, brings this class action to remedy the significant financial harm caused by Merrill's use of its Sweep Program to enrich itself and the Affiliate Banks at the expense of its clients, and asserts claims against Defendants for breach of fiduciary duty, gross negligence, breach of the implied covenant of good faith and fair dealing, negligent misrepresentations and omissions, violation of the New York General Business Law § 349, and unjust enrichment.

---

[3] Until May 2024, Merrill clients enrolled in the MLBD Program were paid interest at the same low interest rates regardless of whether or not they were enrolled in an investment advisory program. Since May 2024, Merrill has offered participants in the MLBD Program who are enrolled in the Merrill Lynch Investment Advisory Program, the Merrill Lynch Strategic Portfolio Advisor Service, the Merrill Lynch Managed Account Service, the BlackRock Private Investors Service, the Merrill Guided Investing Program, the Merrill Guided Investing with Advisor Program, and the Merrill Edge Advisory Account Program a substantially higher interest rate on swept cash than the rates offered to clients who are not enrolled in an investment advisory program. Additionally, clients enrolled in the MLDD Program who are also enrolled in the Merrill Guided Investing Program receive a substantially higher interest rate on swept cash than the rates offered to clients who are not enrolled in an investment advisory program.

## II.    JURISDICTION AND VENUE

7.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are more than 100 Class members, Plaintiff is a citizen of a different state than one or more Defendants, and greater than two-thirds of the Class reside in states other than the state in which any given Defendant is a citizen.

8.    This Court has personal jurisdiction over each of the Defendants. Defendants purposefully directed their business activity toward this District and maintained substantial contacts in this District and throughout the United States. Defendants' conduct has had the intended effect of causing injury to individuals and companies residing in or doing business throughout the United States, including in this District. Additionally, at all relevant times, Defendant MLPF&S was headquartered in this District.

9.    Venue is appropriate within this District under 28 U.S.C. § 1391. At all relevant times, Defendants transacted business within this District and/or had agents in and/or that can be found in this District and engaged in a substantial portion of the activity at issue in this Complaint in this District.

10.    No other forum would be more convenient for the parties and witnesses to litigate this case.

## III.    PARTIES

### A.    Plaintiff

11.    Plaintiff Robert J. Campton Jr. is a citizen of New Jersey and resides in East Brunswick, New Jersey. Plaintiff has been a client of Merrill since 2018, when he initially opened a Merrill Cash Management Account. Plaintiff closed his Merrill account in December 2022.

Throughout the period that Plaintiff maintained an account with Merrill, Plaintiff was enrolled in the Merrill Lynch Investment Advisory Program, and Merrill automatically swept uninvested cash balances from Plaintiff's Merrill brokerage account to a deposit account with an Affiliate Bank as part of the Sweep Program. When there was a balance in Plaintiff's deposit account, Merrill paid interest to Plaintiff on his funds in the Sweep Program. At the time he closed his account, Plaintiff was receiving the Merrill Lynch Bank Deposit Program's Tier 2 rate of interest—0.01%—on cash held in the Sweep Program.

 **B.**  **Defendants**

  12.  Defendant Merrill Lynch, Pierce, Fenner & Smith Inc. ("MLPF&S") is a Delaware corporation, with its principal executive offices located in New York City, New York. MLPF&S, a wholly-owned subsidiary of Bank of America, is a registered broker-dealer and investment adviser with the SEC, and is a member firm of the Financial Industry Regulatory Authority ("FINRA"), the New York Stock Exchange, other securities exchanges, and a member of the Securities Investor Protection Corporation. MLPF&S acts as its clients' agent for the establishment, maintenance, and operation of the Sweep Program. MLPF&S is a wholly owned subsidiary of, and controlled by, Defendant Bank of America.

  13.  Defendant Managed Account Advisors LLC ("MAA"), a MLPF&S affiliate, is a Delaware corporation with principal executive offices located in Jersey City, New Jersey. MAA provides investment management services, portfolio management, asset allocation, brokerage, and consulting services to retail investors. MAA is the overlay portfolio manager responsible for implementing the investment advisory strategies, when applicable, for Merrill client accounts.

  14.  Defendant Bank of America Corporation ("Bank of America") is a Delaware corporation with its principal executive offices located in Charlotte, North Carolina. Bank of

America provides a diversified range of banking and nonbank financial services and products. Bank of America is the parent company and control person of MLPF&S.

## IV.    FACTUAL ALLEGATIONS

15.    Bank of America is one of the largest financial institutions in the United States. Bank of America offers clients a full range of banking, investing, asset management and other financial and risk management products and services.

16.    MLPF&S is Bank of America's SEC-registered broker-dealer subsidiary. MLPF&S offers investment-related products and services, including brokerage services and discretionary and non-discretionary investment advisory services to retail clients throughout the United States.

17.    MLPF&S offers a number of brokerage account types to investors, including, *inter alia*, Merrill Cash Management Accounts ("CMA Accounts"), Merrill CMA SubAccounts, CMA for Trust, Merrill Health Savings Accounts, Merrill Medical Savings Accounts, and Merrill Edge Self-Directed CMA Accounts, Business Investor Accounts ("BIAs", Working Capital Management Account ("WCMA Accounts"), WCMA SubAccounts, Endowment Management Accounts (EMA), EMA II, EMA SubAccounts, Merrill Edge Self-Directed BIAs, and Merrill Edge Self-Directed WCMA Accounts. These brokerage accounts are securities accounts that allow clients to trade mutual funds, stocks, fixed income and other securities. In connection with each of these accounts, clients enter into account agreements with MLPF&S (the "Account Agreements").[4]

---

[4] Specifically, the "Account Agreements" include the Merrill Client Relationship Agreement, Merrill CMA Financial Service Cash Management Account Agreement, Merrill HSA Disclosure Statement and Account Agreement, Merrill Edge Self-Directed CMA Account Agreement, Merrill Edge Self-Directed Business Investment Account Application Booklet and Agreements, Business Investor Account (BIA) amd Working Capital Management Account (WCMA) Agreement and Program Description, and Merrill EMA Account Agreement.

18.    Merrill also offers investment advisory services through a number of programs, including the Merrill Lynch Investment Advisory Program, Strategic Portfolio Advisor Service, Managed Account Service, Merrill Guided Investing with Advisor, Merrill Edge Advisory Account, Merrill Guided Investing, and Institutional Investment Consulting (collectively, the "Advisory Programs").[5] Through its Advisory Programs, Merrill provides clients with "advice and guidance, access to investment strategies and certain brokerage and custody services" as well as providing "ongoing monitoring."[6]

19.    MAA provides "discretionary services" to certain Advisory Programs, "invest[ing] assets by implementing investment strategies of Merrill and/or third-party managers" and "process[ing] contributions and withdrawals," as well as providing other services.[7]

20.    In connection with its Advisory Programs, Merrill requires clients to maintain brokerage accounts. In addition to the Account Agreements, Merrill enters into additional client agreements with clients enrolled in its investment advisory programs (the "Advisory Agreements").[8]

21.    The Merrill Client Relationship Agreement provides that New York law governs clients' agreements and transactions with Merrill.[9]

---

[5] *See Client Relationship Agreement*, Merrill (Mar. 22, 2024), https://olui2.fs.ml.com/publish/content/application/pdf/GWMOL/ClientRelationshipAgreement.pdf.

[6] *Id.*

[7] *Summary of programs and services*, Merrill (Jan. 5, 2024), https://olui2.fs.ml.com/publish/content/application/pdf/gwmol/summary-programs-services.pdf.

[8] Specifically, the "Advisory Agreements" include the Merrill Edge Advisory Account Program Client Agreement, Merrill Guided Investing Client Agreement, and Merrill Guided Investing with Advisor Client Agreement.

[9] *Client Relationship Agreement*, Merrill (Mar. 22, 2024), https://olui2.fs.ml.com/publish/content/application/pdf/GWMOL/ClientRelationshipAgreement.pdf.

A.    **Merrill's Sweep Program**

22.    A sweep program is a "service provided by a broker or dealer where it offers to its client the option to automatically transfer free credit balances in the securities account of the client to either a money market mutual fund product . . . or an account at a bank whose deposits are insured by the Federal Deposit Insurance Corporation." *See* 17 CFR 240.15c3-3(a)(17).

23.    Sweep deposits provide an important source of capital for banks. Banks can use the deposits for general corporate purposes, including making loans or investing in government securities. The difference between the interest rate paid on a sweep account and the interest rate earned by a bank contributes to the bank's net interest income.

24.    Merrill operates a cash sweep program for its clients. Under the Sweep Program, Merrill automatically transfers uninvested cash balances from clients' brokerage accounts into interest-bearing deposit accounts at the Affiliate Banks through the MBDP Program and the MDDP Program.[10]

25.    Interest rates in the Sweep Program are tiered based on the total eligible assets a client holds in Merrill accounts and their participation in Advisory Programs.

26.    Merrill operates the Sweep Program ostensibly to offer its clients an interest-paying vehicle to hold uninvested cash and to provide FDIC insurance on those cash deposits.

---

[10] Clients holding the CMA Account, CMA SubAccount, CMA for Trust, HSA, MSA, BIA, WCMA Account, WCMA SubAccount, EMA, EMA II, EMA SubAccount, Merrill Edge Self-Directed BIA, and Merrill Edge Self-Directed WCMA Account are enrolled in the MLBD Program. Clients holding the Merrill Edge Self-Directed CMA Account are enrolled in the MLDD Program. *See Sweep Program Guide*, Merrill (Aug. 2024), https://olui2.fs.ml.com/publish/content/application/pdf/GWMOL/Sweep-Program.pdf.

**B.      Merrill's Duties to Its Investor Clients**

27.      Merrill owes duties to its clients arising from federal statutes and regulations as well as the relationship between Merrill and its retail investor clients as defined by federal statutes and regulations, the Account Agreements, the Advisory Agreements, and common law.

**1.      Merrill's Duties Under Regulation Best Interest**

28.      Where Merrill is acting in its capacity as a broker-dealer, as it does when it offers brokerage services, it "shall act in the best interest of the retail customer at the time the recommendation is made, without placing the financial or other interest of the broker, dealer . . . ahead of the interest of the retail customer." *See* Regulation Best Interest ("Reg. BI"). 17 CFR § 240.15l-1.

29.      Reg. BI incorporates "key principles underlying fiduciary obligations, including those that apply to investment advisers under the Investment Advisers Act." 84 Fed. Reg. 33318, 33320. Reg. BI and common law principles of fiduciary obligations "generally yield substantially similar results in terms of the ultimate responsibilities owed to retail investors."[11]

30.      Under Reg. BI, regardless of whether an investor chooses a broker-dealer or an investment adviser (or both), the investor "will be entitled to a recommendation … or advice … that is in the best interest of the retail investors and that does not place the interests of the firm or the financial professional ahead of the interests of the retail investor." 84 Fed. Reg. 33318, 33321.

---

[11] *Staff Bulletin: Standards of Conduct for Broker-Dealers and Investment Advisers Care Obligations*, SEC (Oct. 17, 2024), https://www.sec.gov/about/divisions-offices/division-trading-markets/broker-dealers/staff-bulletin-standards-conduct-broker-dealers-investment-advisers-account-recommendations-retail.

31.     Reg. BI consists of a "General Obligation," which states, "When making a recommendation, a broker-dealer must act in the retail customer's best interest and cannot place its own interests ahead of the customer's interests." 84 Fed. Reg. 33318, 33320.

32.     Within the General Obligation are more specific duties, including disclosure duties and a duty to avoid and disclose conflicts of interest.

33.     These specific duties require disclosure of "all material facts relating to conflicts of interest . . . that might incline a broker-dealer to make a recommendation that is not disinterested, including, for example, conflicts associated with proprietary products, payments from third parties, and compensation arrangements." 84 Fed. Reg. 33318, 33321.

34.     One component of a broker-dealer's duty to disclose conflicts of interest concerns compensation. "The receipt of higher compensation for recommending some products rather than others, whether received by the broker-dealer, the associated person, or both, is a fundamental and powerful incentive to favor one product over another." 84 Fed. Reg. 33318, 33364.

35.     Pursuant to Reg. BI, Merrill was required to act in the best interests of its clients when recommending an account type—including a cash sweep account—to its clients, including "understanding . . . the characteristics of a particular type of account [and] should consider, without limitation, factors such as the services and products provided in the account (including ancillary services provided in conjunction with an account type)."[12]

---

[12] *Staff Bulletin*, *supra* note 11.

36. The SEC recently reiterated that compensation, revenue, and other benefits from cash sweep programs give rise to a conflict of interest for both broker-dealers and investment advisers.[13]

37. Under Reg. BI, Merrill was and is prohibited from elevating its own interest above its clients' interests, and was and is obligated to avoid conflicts with clients' interests and to disclose material facts concerning any conflicts that may exist.

38. Merrill's default placement of uninvested cash from Plaintiff's and the Class's investment accounts into the Sweep Program constitutes a "recommendation" within the scope of Reg. BI, and as a result, Merrill was required to act in the best interests of its client when making that recommendation and to adequately disclose the benefit Merrill and its affiliates were receiving from holding client cash in deposit accounts at Affiliate Banks as part of the Sweep Program.

### 2. Merrill's Duties Under the Investment Advisers Act

39. When Merrill acts as an investment adviser for client accounts, it owes its clients a fiduciary duty. *See* Securities and Exchange Commission Interpretation Regarding Standards of Conduct for Investment Advisers, 84 Fed. Reg. 134, 17 CFR § 276 (July 12, 2019) ("Under federal law, an investment adviser is a fiduciary.").

40. "The [Investment] Advisers Act [("IAA")] establishes a federal fiduciary duty for investment advisers. This fiduciary duty is based on equitable common law principles and is fundamental to advisers' relationships with their clients under the [IAA]." *Id.*

---

[13] *See Staff Bulletin: Standards of Conduct for Broker-Dealers and Investment Advisers Conflict of Interest*, SEC (June 12, 2024), https://www.sec.gov/tm/iabd-staff-bulletin-conflicts-interest.

41.     Under this federal duty, Merrill "must, at all times, serve the best interest of its client and not subordinate its client's interest to its own. In other words, the investment adviser cannot place its own interests ahead of the interests of its client." *Id.*

42.     If there is a conflict between one of Merrill's interests and its client's interests, then Merrill is required to "eliminate or make full and fair disclosure of all conflicts of interest which might incline an adviser—consciously or unconsciously—to render advice which is not disinterested such that a client can provide informed consent to the conflict." *Id.*

43.     Merrill "must make full and fair disclosure to [their] clients of all material facts relating to the advisory relationship." *Id.*

44.     Merrill's fiduciary duties also include a duty of care to "provide advice that is in the best interest of the client" and must acknowledge to a client, "when the account types the adviser offers are not in the clients' best interest." *Id.*

45.     Merrill's federal fiduciary duty "may not be waived." *Id.*

46.     Merrill recognizes its fiduciary duty to its investment advisory clients in its Advisory Agreements, in which it acknowledges that "MLPF&S and MAA have certain fiduciary responsibilities to [clients] under the Investment Advisors Act for the Account subject to this agreement."

### 3.     Merrill's Common Law Duties Pursuant to Its Relationship with Sweep Program Clients

47.     The Account Agreements and Advisory Agreements describe Merrill's relationship with clients for the purpose of operating the Sweep Program.

48.     The Account Agreements provide that Merrill acts as agent for customers in the Sweep Program, stating: "In the United States, **Merrill acts as a broker (i.e., agent) for its private clients as well as its corporate and institutional clients**. . . . . Through BANA, and other

bank Affiliates (Bank Affiliates), Merrill provides access to banking services, including lending and cash sweep services."[14] (emphasis added).

49.    Similarly, the Account Agreements state that "Merrill Lynch is acting as agent and messenger for its customers for the deposits at BANA and/or BA-CA" and that cash sweep balances "are held in specified deposit accounts established for you by Merrill Lynch as your agent."[15]

50.    Additionally, the Account Agreements recognize a fiduciary relationship between Merrill and clients receiving investment advisory services, stating that clients agree to appoint Merrill to "act as your investment adviser and agent and you grant Merrill a power of attorney with respect to the Services you choose and authorize us to enter into relationships on your behalf with certain other entities necessary to provide you with those Services."[16]

51.    In documents describing its Advisory Programs, Merrill acknowledges that, "**we are a fiduciary to you**. Merrill and MAA each have certain fiduciary obligations in providing services . . . . As a fiduciary, we will act in your best interest[.]"[17] (emphasis in the original).

---

[14]*Client Relationship Agreement*, Merrill (Mar. 22, 2024), https://olui2.fs.ml.com/publish/ content/application/pdf/GWMOL/ClientRelationshipAgreement.pdf; *see also Best Interest Disclosure Statement*, Merrill (Apr. 2024), https://olui2.fs.ml.com/publish/content/ application/pdf/GWMOL/Regulation-Best-Interest-Disclosure-Statement_RBIDISC.pdf.

[15]    *CMA Financial Service Cash Management Account*, Merrill (July 2024), https://olui2.fs.ml.com/Publish/Content/application/pdf/GWMOL/CashManagementAccountCM ADisclosuresandAccountAgreement.pdf.

[16]    *Client Relationship Agreement*, Merrill (Mar. 22, 2024), https://olui2.fs.ml.com/publish/ content/application/pdf/GWMOL/ClientRelationshipAgreement.pdf.

[17]    *Merrill Guided Investing Wrap Fee Program Brochure*, Merrill (Oct. 18, 2024), https://olui2.fs.ml.com/publish/content/application/pdf/gwmol/merrill-edge-guided-investing-program-brochure.pdf; *Merrill Lynch Investment Advisory Program Wrap Fee Program Brochure,* Merrill (Oct. 18, 2024), https://olui2.fs.ml.com/Publish/Content/application/pdf/ GWMOL/mliap-wrap-fee-program-brochure-adv2a.pdf; *Merrill Guided Investing with Advisor Wrap Fee Program Brochure*, Merrill (Oct. 18, 2024), https://olui2.fs.ml.com/publish/content/ application/pdf/gwmol/guided-investing-program-brochure.pdf; *Merrill Edge Advisory Account*

52.     Because Merrill acts as its clients' agent for the purposes of establishing deposits accounts, making deposits, and making withdrawals under the Sweep Program and exercises discretion in carrying out its duties as agent, Merrill owes fiduciary duties to clients enrolled in the Sweep Program.

53.     Additionally, under New York law a covenant of good faith and fair dealing is implied in every contract and prevents one party from unfairly frustrating the other party's right to receive the benefits of the contract.

54.     Accordingly, by entering into the Account Agreements and Advisory Agreements, Merrill  established a covenant of good faith and fair dealing with its clients. The Account Agreements and Advisory Agreements establish a fiduciary relationship between Merrill and the Class, stating that Merrill acknowledges that it acts as its clients' "agent" for deposits made via the Sweep Program.

### C.     The Sweep Program Fails to Pay Reasonable Interest Rates

55.     Despite its duties to act in its clients' best interest, Merrill fails to secure and pay a reasonable rate of interest on cash balances in the Sweep Program.

56.     For example, as of November 12, 2024, the interest rates Merrill secured and paid for cash deposits in the Sweep Program were:[18]

---

*Program Wrap Fee Program Brochure*, Merrill (Oct. 18, 2024), https://olui2.fs.ml.com/publish/content/application/pdf/gwmol/me_advisory_account_disclosure_form_adv_2a.pdf.

[18]     *Merrill Rate Sheet*, Merrill (Nov. 12, 2024), https://olui2.fs.ml.com/Publish/Content/application/pdf/GWMOL/ICCRateSheet.pdf.

| From | To | MLBD Program Annual Percentage Yield[19] | MLDD Program Annual Percentage Yield[20] |
|---|---|---|---|
| $0 | $249,999 | 0.01% (Tier 1) | |
| $250,000 | $999,999 | 0.01% (Tier 2) | 0.01% |
| $1,000,000 | $9,999,999 | 0.05% (Tier 3) | |
| $10,000,000 | and above | 0.15% (Tier 4) | |

57.     The interest rates Merrill secures for and pays to its clients in the Sweep Program violate Merrill's duties to its clients because the rates are unreasonably low, with Defendants pocketing, through the Affiliate Banks, nearly the entire spread made on the cash, constituting a breach of Merrill's fiduciary duties to its clients and falling below the applicable standards of care.

58.     Under any definition of the term, Merrill did not secure and pay "reasonable" rates of interest to Plaintiff and the Class on deposits made via the Sweep Program and therefore, did not act in its clients' "best interests."

59.     In 2003, the Department of Labor (the "DOL") provided the following definition of a "reasonable" rate of interest when issuing an exemption to certain transaction restrictions. 68 Fed. Reg. 34646, 34648 (June 10, 2003). The DOL explained that a reasonable rate of interest is determinable by reference to, *inter alia*, short term rates "offered by other banks," "those available from money market funds," "or by reference to a benchmark such as sovereign short term debt (*e.g.*, in the U.S., treasury bills)." *Id.*

---

[19] Clients enrolled in the MLBD Program as well as the Merrill Lynch Investment Advisory Program, the Merrill Lynch Strategic Portfolio Advisor Service, the Merrill Lynch Managed Account Service, the BlackRock Private Investors Service, the Merrill Guided Investing Program, the Merrill Guided Investing with Advisor Program, or the Merrill Edge Advisory Account Program received the Tier 5 interest rate of 4.63%.

[20] Clients enrolled in the MLDD Program as well as the Merrill Guided Investing Program received the Tier 6 interest rate of 4.63%.

60.    The rates offered through the Sweep Program are significantly lower than sweep programs at certain other financial institutions. For example, the following chart compares Merrill's Sweep Program's rates with those of two comparable programs:

| Cash Balance | MLBD Program Rate[21,22] | MLDD Program Rate[23] | Vanguard Sweep Rate[24] | Fidelity Sweep Rate[25] |
|---|---|---|---|---|
| Under $250,000 | 0.01% (Tier 1) | 0.01% | 3.90% | 4.50% |
| Between $250,000 and $999,999 | 0.01% (Tier 2) | 0.01% | 3.90% | 4.50% |
| Between $1 million and $9,999,999 | 0.05% (Tier 3) | 0.01% | 3.90% | 4.50% |
| $10 million and above | 0.15% (Tier 4) | 0.01% | 3.90% | 4.50% |

61.    Thus, other financial institutions that use sweep programs pay or secure significantly higher rates than Merrill—in some instances, even more than 450 times higher.

62.    Likewise, money market fund rates also provide a benchmark for determining what constitutes a "reasonable rate" and / or a reasonable alternative investment for clients' cash.

---

[21] *Merrill Rate Sheet*, Merrill (Nov. 12, 2024), https://olui2.fs.ml.com/Publish/Content/application/pdf/GWMOL/ICCRateSheet.pdf.

[22] Clients enrolled in the MLBD Program as well as the Merrill Lynch Investment Advisory Program, the Merrill Lynch Strategic Portfolio Advisor Service, the Merrill Lynch Managed Account Service, the BlackRock Private Investors Service, the Merrill Guided Investing Program, the Merrill Guided Investing with Advisor Program, or the Merrill Edge Advisory Account Program received the Tier 5 interest rate of 4.63%.

[23] Clients enrolled in the MLDD Program as well as the Merrill Guided Investing Program received the Tier 6 interest rate of 4.63%.

[24] *See Vanguard Cash Plus Account*, Vanguard, https://investor.vanguard.com/accounts-plans/vanguard-cash-plus-account (last visited Nov. 13, 2024).

[25] *Help your cash work harder*, Fidelity, https://www.fidelity.com/go/manage-cash-rising-costs (last visited Nov. 13, 2024).

63.     Some of Merrill's competitors automatically sweep any uninvested cash deposited in its clients' accounts into money market funds that earn comparably high rates of interest. For example, by default, Fidelity sweeps uninvested cash in its retail clients' accounts into a money market fund currently earning 4.50%.[26]

64.     Merrill's interest rates for deposits in its Sweep Program are also astonishingly low in comparison to short term U.S. Treasury rates. For example, the 1-Month U.S. Treasury Rate on November 12, 2024 was 4.52%, compared to Merrill's rates that applied to Class Members under the Sweep Program ranging from 0.01% to 0.15% that same day.

65.     In fact, while Merrill's interest rates paid to Class Members under the Sweep Program have ranged from 0.01% to 1.06% from June 2022 to present, the 1-Month U.S. Treasury Rate has exceeded 1.5% and reached over 5% during that same period:



**Yield Curve**

---

[26] *See id*.

66.     Merrill's Sweep Program interest rates are also far below the Federal Reserve's benchmark federal funds rates, currently at 4.50% to 4.75%.

67.     Most egregiously, Merrill itself currently pays a 4.63% interest rate on cash balances in the Sweep Program to clients in its Advisory Programs.[27] The fact that it now offers this interest rate on swept cash to a subset of its client base illustrates that Merrill is able to secure, and the Affiliate Banks are able to pay, much higher interest rates on funds included in the Sweep Program than it pays to Plaintiff and the Class and underscores the unreasonableness of the interest rates that it does pay. And, as described in more detail below, Merrill's Affiliate Banks and, consequently, Merrill's parent Bank of America, improperly reap substantial benefits from its Sweep Program at its clients' expense.

### D.     The Sweep Program Benefits Merrill Rather Than Its Clients

68.     The Sweep Program primarily benefits Defendants at the expense of Plaintiff and the Class.

69.     Defendants devised a scheme by which they generate significant profits for the Affiliate Banks using clients' cash balances in the Sweep Program. The scheme is devised to maximize profits for Bank of America while at the same time disregarding the clients' best interest.

70.     Merrill directs all accounts participating in the Sweep Program to its Affiliate Banks, which are each subsidiaries of Bank of America. The Affiliate Banks earn interest revenue on non-trading assets that they hold, including the cash deposits held as part of the Sweep Program. There is a significant difference, or "spread," between what the Affiliate Banks earn on the deposits in the Sweep Program and the interest that Merrill pays to Plaintiff and the Class on those deposits.

---

[27] *Yields at a Glance: Cash Management Solutions*, Merrill (Nov. 12, 2024), https://olui2.fs.ml.com/publish/content/application/pdf/gwmol/iccratesheet.pdf.

Nearly all of the spread—except a $100 per account annual fee paid to Merrill—is pocketed by the Affiliate Banks in the form of net interest income, despite the fact that Merrill is acting as an agent and fiduciary for Plaintiff and the Class.

71.     Instead of exercising its discretion to benefit Plaintiff and the Class, Merrill exercises its discretion with regard to the operation of the Sweep Program to benefit the Affiliate Banks, and, consequently, Bank of America. At the same time MLPF&S and MAA were acting as their clients' agents and fiduciaries in connection with the Sweep Program, they were beholden to Bank of America, whose interest they placed ahead of their clients' interests.

72.     While the Affiliate Banks are not fiduciaries of those clients and can establish whatever "spread" they could negotiate in arm's length transactions with their depositors, Merrill is a fiduciary of those clients, and in that capacity is required to put its clients' interests first while negotiating and entering into transactions with Affiliate Banks regarding the Sweep Program.

73.     Merrill admits that the Sweep Program affords the Affiliate Banks "a stable, cost-effective source of funding. They use these bank deposits to fund current and new lending, investment and other business activities. The participation of the Bank Affiliates in the [Sweep Program] increases their respective deposits and overall profits."[28]

74.     Merrill further admits to clients enrolled in the Sweep Program that "[t]he greater the amount of cash balances maintained in your accounts (which could be as a result of a recommendation from your financial advisor) that is swept into a bank deposit account affiliated

---

[28] *Sweep Program Guide*, Merrill (Aug. 2024), https://olui2.fs.ml.com/publish/content/application/pdf/GWMOL/Sweep-Program.pdf.

with the . . . Sweep Program and the lower the interest rate paid on the related bank deposit, the more our Bank Affiliates benefit."[29]

75.    Merrill's scheme allows Bank of America to boost its net interest income by paying to Plaintiff and the Class an unreasonably low interest rate that constitutes only a miniscule fraction of the return produced by cash held in their deposit accounts as part of the Sweep Program.

76.    Indeed, Bank of America's net revenue is heavily impacted by its net interest income.

77.    In addition to earning net interest income on cash held in the Sweep Program, MLPF&S earns fees from its Bank Affiliates for each deposit account opened as part of the Sweep Program.

78.    Merrill admits that "Merrill receives payments from our Bank Affiliates on a per account basis for each account that sweeps to one of [its] Bank Affiliates relating to offering and supporting the [Sweep Program]."[30]

79.    Additionally, Merrill allows advisors offering services through its Advisory Programs to use the Sweep Program to enrich themselves at their clients' expense. Merrill investment advisors "receive increased compensation based on achieving a number of strategic objectives, including, among other activities, the growth in their clients' participation in bank sweep deposits[.]"[31]

---

[29] *Id.*

[30] *Best Interest Disclosure Statement*, Merrill (April 2024), https://olui2.fs.ml.com/publish/content/application/pdf/gwmol/regulation-best-interest-disclosure-statement_rbidisc.pdf.

[31] *Sweep Program Guide*, Merrill (Aug. 2024), https://olui2.fs.ml.com/publish/content/application/pdf/GWMOL/Sweep-Program.pdf.

80.    The rates paid by Merrill to its clients pursuant to the Sweep Program violate Merrill's duties to its clients because these rates are not reasonable and place Merrill's interests above its clients' interests.

81.    Merrill's continual sweep of Plaintiff's and the Class's cash into the Sweep Program constitutes a continuing wrong and was a continuing breach of Merrill's duties to Plaintiff and the Class. Each time Merrill's places Plaintiff's and the Class's cash into the Sweep Program, Merrill newly injures Plaintiff and the Class.

82.    Bank of America acknowledged that the interest rate paid pursuant to Merrill's Sweep Program created a legal risk in its quarterly report filed with the United States Securities and Exchange Commission on July 30, 2024, stating that "the rates paid on uninvested cash in investment advisory accounts that is swept into interest paying bank deposits" were among the "risks and uncertainties" about which Bank of America shareholders should be informed.[32]

83.    Moreover, Merrill's own actions belie its knowledge that its unreasonably low interest rates on cash deposits in the Sweep Program are unlawful. In May 2024, approximately six months after an accountholder filed a class action lawsuit on behalf of Merrill Edge retirement accountholders challenging the interest rates Merrill paid on their swept cash,[33] Merrill began paying certain clients, including those enrolled in certain investment advisory programs, higher rates of interest on cash held in the Sweep Program. While clients in Tiers 1 through 4 of the MLBD Program continue to receive interest rates between 0.01% and 0.15% on swept cash, on or

---

[32]    Bank of America Corporation, Form 10-Q, at 2, (July 30, 2024), https://investor.bankofamerica.com/regulatory-and-other-filings/all-secfilings/content/0000070858-24-000208/bac-20240630.htm.

[33]    *See McCrary v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 1:23-cv-10768 (S.D.N.Y. Dec. 11, 2023), ECF No. 1.

about May 20, 2024, Merrill provided those clients enrolled in both the MLBD Program and its investment advisory programs with a 5.16% interest rate on swept cash. Today, clients enrolled in both the MLBD Program and an Advisory Program receive a 4.63% interest rate on swept cash.

E.    **Merrill's Disclosures to Its Clients Concerning the Sweep Program Contained Material Misrepresentations and Omissions**

84.    The Account Agreements, Advisory Agreements, Best Interest Disclosure Statement, CMA Financial Service Cash Management Account Disclosures, Sweep Program Guide, Merrill Edge Advisory Account Program Wrap Fee Program Brochure, Merrill Edge Guided Investing Program Brochure, Merrill Guided Investing with Advisor Program Brochure, Merrill Lynch Investment Advisory Program Brochure, Merrill Managed Account Brochure, Merrill Portfolio Advisor Service Brochure, and Client Relationship Summary (together, the "Sweep Program Disclosures") describe the Sweep Program.

85.    The Sweep Program Disclosures contained material misrepresentations and omissions that presented the terms and operation of the Sweep Program inaccurately to Plaintiff and the Class.

86.    Specifically, Defendants made material omissions by failing to disclose that, as discussed above, Defendants established and used the Sweep Program to enrich themselves by paying unreasonably low interest rates to customers in order to increase Defendants' financial benefits from the Sweep Program

87.    For example, the Sweep Program Disclosures misleadingly stated that "***from time to time***" the Deposit Account interest rates "will ***likely be*** lower than yields on certain money market funds and other cash alternatives"[34] (emphasis added) and that the Deposit Account interest

---

[34] *Best Interest Disclosure Statement*, Merrill (Mar. 22, 2024), https://olui2.fs.ml.com/publish/content/application/pdf/GWMOL/Regulation-Best-Interest-Disclosure-Statement_RBIDISC.pdf

rates "[w]ill *likely be* lower than the rates available on other deposit type accounts at the Merrill Affiliated Banks and other banking institutions and yields on cash alternatives, such as money market funds."[35] (emphasis added). These statements were misleading and omitted material facts because, in reality, the Deposit Account interest rates were *always* significantly below market interest rates available on other deposit-type accounts and cash alternatives.

88.     The Sweep Program Disclosures further claim that "[i]nterest rates paid on deposits in the [Sweep] Program are determined at the discretion of BANA and BA-CA based on economic and business conditions." This statement is false and misleading because, rather than being driven by economic and business conditions such as prevailing interest rates, the interest rates available for cash in the Sweep Program are driven by a desire to provide net interest income to the Affiliate Banks.

89.     Additionally, the Merrill Sweep Program Guide explains:

> Merrill Affiliated Banks benefit financially from their use of the cash sweep deposits. Through the Sweep Program, they receive a stable, cost-effective source of funding. Bank profitability is determined, in large part, by the "spread" they earn on the deposits — the difference between the interest paid and other costs incurred by them on bank deposits (including payments to Merrill), on the one hand, and the interest or other income earned on their loans, investments and other assets, which may be funded in part by bank deposits, on the other hand. The greater the amount of cash balances maintained in deposit accounts with the Merrill Affiliated Banks (which could be as a result of a recommendation from your financial

---

(Apr. 2024); *Client Relationship Agreement*, Merrill (Mar. 22, 2024), https://olui2.fs.ml.com/publish/content/application/pdf/GWMOL/ClientRelationshipAgreement.pdf.

[35]    *Sweep Program Guide*, Merrill (Aug. 2024), https://olui2.fs.ml.com/publish/content/application/pdf/GWMOL/Sweep-Program.pdf.

advisor) and the lower the interest rate paid on the related bank deposit, the more the Merrill Affiliated Banks benefit.[36]

90.     Importantly, this disclosure omits the actual proportions between the returns that Merrill allows the Affiliate Banks to retain on Merrill clients' cash in the Sweep Program, and the returns that those clients actually receive, and also omit the fact that that Merrill is negotiating and entering into such transactions regarding the Sweep Program while conflicted and putting Bank of America's interest first.

91.     Defendants also misleadingly claimed that they "adopted various policies and procedures reasonably designed to prevent the cash sweep arrangement and other business arrangements from affecting the nature of the advice we and our financial advisors provide"[37] when, in fact, such arrangements harmed clients by causing Defendants to automatically sweep client deposits into deposit accounts paying miniscule, below-market interest rates.

92.     Unbeknownst to Merrill's clients in the Sweep Program, their agent, Merrill enabled the Sweep Program to function as a highly profitable arbitrage operation, with the Affiliate Banks taking advantage of the nearly free cash funneled to them by Merrill as agent of its clients, and retaining for Bank of America the vast majority of the profits they generate with that cash.

## V.    CLASS ACTION ALLEGATIONS

93.     Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2), and (b)(3) on behalf of the following Class:

All persons and entities who had cash deposits or balances in account Tiers 1-4 of the Merrill Lynch Bank Deposit Program and/or in the Merrill Lynch Direct

---

[36] *Sweep Program Guide*, Merrill (Aug. 2024), https://olui2.fs.ml.com/publish/content/application/pdf/GWMOL/Sweep-Program.pdf.

[37] *Client Relationship Agreement*, Merrill (Mar. 22, 2024), https://olui2.fs.ml.com/publish/content/application/pdf/GWMOL/ClientRelationshipAgreement.pdf.

Deposit Program, excluding those who have only received interest payments at Tier 6 of the Merrill Lynch Direct Deposit Program.

94.    Excluded from the Class are Defendants and their parents, subsidiaries, and corporate affiliates and governmental entities. Plaintiff reserves the right to revise the definition of the Class based upon subsequently discovered information and reserves the right to establish Sub-Classes where appropriate.

95.    Members of the Class are so numerous that joinder of all members is impracticable. The precise number of Class members and their identities are unknown to Plaintiff at this time. Plaintiff believes that there are at least thousands of proposed members of the Class throughout the United States. The Class members may be identified from Defendants' business records. Common questions of law and fact exist as to all the Class members and predominate over any issues solely affecting individual Class members. The common and predominating questions of law and fact, each of which may also be certified under Rule 23(c)(4), include, but are not limited to:

a.    Whether Merrill owed fiduciary duties to Plaintiff and the Class in connection with the Sweep Program;

b.    Whether Merrill breached its fiduciary duties to Plaintiff and the Class through its operation of the Sweep Program;

c.    Whether Merrill's disclosures about the Sweep Program contained material misrepresentations and/or omissions;

d.    Whether Merrill breached the implied covenant of good faith and fair dealing with Plaintiff and the Class regarding the Sweep Program;

e.    Whether Merrill violated New York General Business Law § 349;

f.    Whether Defendants were unjustly enriched by their wrongful conduct;

g.  Whether this case may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure;

h.  Whether damages, restitution, equitable, injunctive, compulsory, or other relief is warranted; and

i.  Whether and to what extent Plaintiff and the Class are entitled to recover attorneys' fees and costs.

96.     Plaintiff's claims are typical of the claims of the Class that Plaintiff seeks to represent. As alleged herein, Plaintiff and the Class sustained damages arising out of the same unlawful actions and conduct by Defendants.

97.     Plaintiff is willing and prepared to serve the Class in a representative capacity with all of the obligations and duties material thereto. Plaintiff will fairly and adequately protect the interests of the Class and has no interests adverse to or in conflict with the interests of the other members of the Class.

98.     Plaintiff's interests are co-extensive with and are not antagonistic to those of absent members within the Class. Plaintiff will undertake to represent and protect the interests of absent members within the Class and will vigorously prosecute this action.

99.     Plaintiff has engaged the services of the undersigned counsel. Counsel is experienced in complex class action litigation, will adequately prosecute this action and will assert and protect the rights of, and otherwise represent, Plaintiff and absent Class members.

100.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this litigation that would preclude its maintenance as a class action.

101.    The damages or other financial detriment suffered by individual Class members are small compared with the burden and expense that would be entailed by individual litigation of their claims against Defendants. It would thus be virtually impossible for Class members, on an individual basis, to obtain effective redress for the wrongs done them. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

102.    Superiority is particularly satisfied in these circumstances, where the law of a single state will apply to all state law claims. Under the uniform contract terms with Merrill, the laws of New York will apply to each Class member's state law claims, allowing the Court to adjudicate the claims of all Class under a single state analysis.

103.    Class action status is warranted under Rule 23(b)(3) because questions of law or fact common to the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

104.    The Class may also be certified under Rule 23(b)(2) because Defendants have acted on grounds generally applicable to the Class, thereby making it appropriate to award final injunctive relief or corresponding declaratory relief with respect to the Class.

105.    The interest of members within the Class individually controlling the prosecution of separate actions is theoretical and not practical. The Class members have a high degree of similarity and are cohesive, and Plaintiff anticipates no difficulty in the management of this matter as a class action.

106.    The nature of notice to the proposed Class is contemplated to be by direct mail upon certification of the Class or, if such notice is not practicable, by the best notice practicable under the circumstance including, *inter alia*, email, publication in major newspapers, and/or on the internet.

## VI.    CLAIMS FOR RELIEF

### COUNT I

### Breach of Fiduciary Duty

107.    Plaintiff incorporates by reference and re-alleges the allegations contained in the preceding paragraphs of this Complaint.

108.    Plaintiff brings this cause of action individually and on behalf of all Class members against all Defendants.

109.    At all relevant times, Merrill owed fiduciary duties to Plaintiff and the Class in connection with the Sweep Program. Such duties independently arose out of (1) the agency relationship between Merrill, on one hand, and Plaintiff and the Class on the other hand, as to the Sweep Program; (2) Merrill's exercise of control and discretion over funds that belonged to its clients, related to their cash sweep balances; and/or (3) the applicable industry standards, including the Investment Advisers Act and Reg. BI.

110.    For the purpose of the maintaining and managing the Sweep Program, Merrill acted as an agent of Plaintiff and the Class.

111.    Under Reg. BI, the Investment Advisers Act, and at common law, Merrill owed fiduciary duties Plaintiff and the Class.

112.     As their fiduciary, Merrill had a continuing duty to act exclusively for the benefit of Plaintiff and the Class in connection with establishing, maintaining, and/or operating the Program.

113.     As fiduciary to Plaintiff and the Class, at all relevant times, Merrill's duties to Plaintiff and the Class included, but were not limited to:

        a.  a duty of undivided loyalty;

        b.  a duty to act in the best interests of its clients;

        c.  a duty of care;

        d.  a duty not to place Merrill's interests and/or the interests of Bank of America and the Affiliate Banks above those of its clients;

        e.  a duty to avoid conflicts of interest; and

        f.  a duty to disclose any conflicts of interest.

114.     Plaintiff and the Class were fully dependent upon Merrill's ability, skill, knowledge, and goodwill with respect to the Sweep Program. Bank of America owns and controls Merrill.

115.     Merrill violated each of the foregoing duties when it (1) allocated Plaintiff and the Class's cash into deposit accounts that benefited Defendants above Merrill's clients' interests; and (2) set and paid an unreasonably low rate of interest on Plaintiff and the Class's cash balances in the Sweep Program.

116.     As a direct and proximate consequence of Defendants' conduct as alleged herein, Plaintiff and the Class suffered damages in an amount to be determined at trial and seek disgorgement of any undue and unjust gains of Defendants, punitive damages, as well as all other equitable relief deemed just and proper.

## COUNT II

## Gross Negligence

117.     Plaintiff incorporates by reference and re-alleges the allegations contained in the preceding paragraphs of this Complaint.

118.     Plaintiff brings this cause of action individually and on behalf of all Class members against all Defendants.

119.     At all relevant times, Merrill owed fiduciary duties to Plaintiff and the Class in connection with the Sweep Program. Such duties independently arose out of (1) the agency relationship between Merrill, on one hand, and Plaintiff and the Class on the other hand, as to the Sweep Program; (2) Merrill's exercise of control and discretion over funds that belonged to its clients, related to their cash sweep balances; and/or (3) the applicable industry standards.

120.     For the purpose of the maintaining and managing the Sweep Program, Merrill acted as an agent of Plaintiff and the Class.

121.     Under Reg. BI, the Investment Advisers Act, and at common law, Merrill owed fiduciary duties Plaintiff and the Class.

122.     As their fiduciary, Merrill had a continuing duty to act exclusively for the benefit of Plaintiff and the Class in connection with establishing, maintaining, and/or operating the Sweep Program.

123.     As fiduciary to Plaintiff and Class, at all relevant times, Merrill's duties to Plaintiff and the Class included, but were not limited to:

> g.   a duty of undivided loyalty;
>
> h.   a duty to act in the best interests of its clients;
>
> i.   a duty of care;

    j.  a duty not to place Merrill's interests and/or the interests of Bank of America and the Affiliate Banks above those of its clients;

    k.  a duty to avoid conflicts of interest; and

    l.  a duty to disclose any conflicts of interest.

124.    Plaintiff and the Class were fully dependent upon Merrill's ability, skill, knowledge, and goodwill with respect to the Sweep Program. Bank of America owns and controls Merrill.

125.    Defendants were not merely negligent; as more fully shown above, they were grossly negligent because their self-serving conduct showed the want of even scant care and/or was an extreme departure from the ordinary standard of conduct and demonstrated reckless indifference to the rights of Plaintiff and Class members.

126.    Merrill violated each of the foregoing duties when it (1) allocated Plaintiff and the Class's cash into deposit accounts that benefited Defendants' interests above Merrill's clients' interests; and (2) set and paid an unreasonably low rate of interest on Plaintiff and the Class's cash balances in the Sweep Program.

127.    As a direct and proximate consequence of Defendants' conduct as alleged herein, Plaintiff and the Class suffered damages in an amount to be determined at trial and seek disgorgement of any undue and unjust gains of Defendants, punitive damages, as well as all other equitable relief deemed just and proper.

## COUNT III

### Negligent Misrepresentations and Omissions

128.    Plaintiff incorporates by reference and re-alleges the allegations contained in the preceding paragraphs of this Complaint.

129.    Plaintiff brings this cause of action individually and on behalf of all Class members against all Defendants.

130.    Merrill was Plaintiff's agent in connection with the Sweep Program and owed Plaintiff a duty of care vis-a-vis the Sweep Program. Bank of America owns and controls Merrill.

131.    Merrill, in the Sweep Program Disclosures, with gross negligence omitted material information and made material misrepresentations to its clients about the Sweep Program as described above.

132.    Merrill's material misrepresentations and omissions concerned critical details of the Sweep Program as described above.

133.    Plaintiff and the Class justifiably relied on Merrill's representations and omissions regarding the Sweep Program and accordingly maintained cash balances in their Merrill accounts to their detriment.

134.    Merrill's grossly negligent misrepresentations and omissions directly and proximately caused harm to Plaintiff and the Class.

135.    Plaintiff and the Class and seek all damages permitted by law.

**COUNT IV**

**Breach of Implied Covenant of Good Faith and Fair Dealing**

136.    Plaintiff incorporates by reference and re-alleges the allegations contained in the preceding paragraphs of this Complaint.

137.    Plaintiff brings this cause of action individually and on behalf of all Class members against MLPF&S and MAA.

138.    Plaintiff and the Class entered into written contracts, including the Account Agreements and Advisory Agreements, with MLPF&S and MAA concerning the Sweep Program.

These documents were and are, for all purposes relevant hereto, contracts between clients and Merrill.

139.    Plaintiff and the Class paid valuable consideration in exchange for these contractual rights.

140.    Inherent in these contracts was, and is, an implied covenant of good faith and fair dealing that requires Merrill to deal fairly with Plaintiff and the Class, to fulfill its obligations to Plaintiff and the Class in good faith, and to not deprive Plaintiff and Class members of the fruits of their bargain.

141.    By failing to pay Plaintiff and the Class a reasonable rate of interest on cash held in its Sweep Program, Merrill breached the implied covenant of good faith and fair dealing inherent in the Account Agreements and Advisory Agreements. Through the implied covenant of good faith and fair dealing, Merrill was obligated to pay Plaintiff and the Class a reasonable rate of interest on cash held in the Sweep Program. By failing to do so, Merrill violated the reasonable expectations of Plaintiff and members of the Class.

142.    Plaintiff and the Class suffered damages as a direct and proximate result of the foregoing breach of the implied covenant of good faith and fair dealing, and they are entitled to damages from Defendants, plus prejudgment interest thereon.

## COUNT V

### Violation of New York General Business Law § 349 –
### Unlawful Deceptive Acts and Trade Practices

143.    Plaintiff incorporates by reference and re-alleges the allegations contained in the preceding paragraphs of this Complaint.

144.    Plaintiff brings this cause of action individually and on behalf of all Class members against all Defendants.

145.    Under the agreements between the parties giving rise to this action New York law applies.

146.    In the state of New York, deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service are unlawful.

147.    The acts and practices of Defendants as alleged herein constitute "deceptive" business acts and practices under GBL § 349(a) as the conduct is misleading in a material way and Plaintiff and the Class have been injured by reason thereof.

148.    Plaintiff alleges that Defendants have, in the course of their business and the course of trade or commerce, undertaken and engaged in unfair business acts and practices under GBL § 349(a) by, among other things, using their Sweep Program to generate substantial revenue for Bank of American and the Affiliate Banks with their clients' cash and beneficial returns on such cash, while paying their clients only a miniscule fraction of those returns and concealing from such clients the amounts of interest that the Affiliate Banks retained for themselves and the fact that those amounts represented the vast majority of such interest. Defendants have further engaged in material misrepresentations and omissions regarding key features of the Sweep Program.

149.    The deceptive business acts or practices described herein presented a threat and likelihood of harm and deception to Plaintiff and the Class in that Defendants systematically perpetrated the unfair conduct upon members of the public by engaging in the conduct described herein.

150.    As a result of Defendants' misrepresentations and omissions of material facts concerning the Sweep Program, Plaintiff and the Class have suffered an ascertainable loss of money, property, and/or value and were harmed and suffered actual damages.

151.    Had Plaintiff and the Class been aware of Defendants' conduct regarding client cash in the Sweep Program, Plaintiff and the Class would not have participated in those investment products or would have done so on different terms.

152.    The gravity of harm resulting from Defendants' unfair conduct outweighs any potential utility.

153.    The harm from Defendants' conduct was not reasonably avoidable by Plaintiff and the Class because only Defendants were aware of the true facts concerning the Sweep Program, and Defendants did not disclose these facts, or did not sufficiently disclose them.

154.    Plaintiff and the Class have suffered injury in fact and have lost money as a direct and proximate result of Defendants' business acts or practices. Monies lost by Plaintiff and the Class include, without limitation, the beneficial returns on cash positions from the Sweep Program that Defendants improperly withheld from Plaintiff and the Class as set forth above.

155.    Through their unfair conduct, Defendants acquired money that Plaintiff and the Class were entitled to.

156.    Plaintiff and the Class accordingly seek appropriate relief under GBL § 349, including (a) in the alternative, restitution in full and disgorgement of all profits relating to the above-described unfair business acts or practices, and (b) such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair practices.

157.    Plaintiff, individually and on behalf of and the Class also seeks reasonable attorneys' fees and costs under applicable law, including GBL § 349(h).

**COUNT VI**

**Unjust Enrichment**

158.    Plaintiff incorporates by reference and re-alleges the allegations contained in the preceding paragraphs of this Complaint.

159.    Plaintiff brings this cause of action individually and on behalf of all Class members against all Defendants.

160.    Defendants were enriched when they swept available cash balances from Plaintiff and the Class's accounts into accounts selected for Defendants' benefit and retained a substantial portion of the interest generated by those cash balances.

161.    Defendants' enrichment was at the expense of Plaintiff and the Class.

162.    It is against equity and good conscience to permit Defendants to retain these benefits.

163.    Plaintiff and the Class seek an order requiring Defendants to disgorge the amount of their unjust enrichment to Plaintiff and the Class, together with interest, in a manner to be determined by the Court.

**VII.    PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that this Court enter judgment against Defendants and in favor of Plaintiff and the Class, and award the following relief:

a.    An order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiff as the representative of the Class, and Plaintiff's counsel as counsel for the Class;

a. An order awarding declaratory relief and enjoining Defendants from continuing the unlawful, deceptive, fraudulent, harmful, and unfair business conduct and practices alleged herein;

b. Appropriate injunctive and equitable relief;

c. A declaration that Defendants are financially responsible for all Class notice and the administration of Class relief;

d. An order awarding costs, restitution, disgorgement, punitive damages, statutory damages, treble damages, and exemplary damages under applicable law, and compensatory damages for economic loss, and out-of-pocket costs in an amount to be determined at trial;

e. An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded;

f. An award of costs, expenses, and attorneys' fees as permitted by law; and

g. Such other or further relief as the Court may deem appropriate, just, and equitable.

## VIII.   DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

DATED: November 13, 2024

*/s/ Joseph H. Meltzer*
**KESSLER TOPAZ**
**  MELTZER & CHECK, LLP**
Joseph H. Meltzer
jmeltzer@ktmc.com
Ethan Barlieb
ebarlieb@ktmc.com
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

**CARELLA BYRNE CECCHI**
**BRODY & AGNELLO, P.C.**
James E. Cecchi
jcecchi@carellabyrne.com
Kevin G. Cooper
kcooper@carellabyrne.com
5 Becker Farm Rd.
Roseland, NJ 07068
Telephone: 973-994-1700

***Counsel for Plaintiff and the Proposed Class***